IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARK A. SCHIEFELBEIN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 3:11-cv-0066 |
| | ) |
| JIM MORROW, | ) Chief Judge Sharp |
| | ) |
| Respondent. | ) |

## ORDER

Pending before the Court are a Report and Recommendation ("R&R") by the Magistrate Judge (Docket Entry No. 76) and Objections filed by the Petitioner. (Docket Entry No. 77.) For the reasons set forth below and in the R&R, the Court overrules Petitioner's objection and adopts and approves the Magistrate Judge's Report and Recommendation. Accordingly, Petitioner's motion for summary judgment (Docket Entry No. 49) is **DENIED**.

In this habeas corpus action brought by a state inmate under 28 U.S.C. § 2254, the Magistrate Judge recommends in his R&R that Petitioner's motion for summary judgment on his claim for judicial bias (Docket Entry No. 49) be denied. The Magistrate Judge has found that the amended petition in which Petitioner raised his judicial bias claim was timely and that, at least for the purposes of ruling on the present motion, the claim should be treated as exhausted in state court. (Docket Entry No. 76 at 3–4, 8, 10.) Respondent has not objected to those conclusions. (Docket Entry No. 80.) Thus, the only issue before the Court is the merit of Petitioner's motion.

### I. BACKGROUND

In support of his motion for summary judgment, Petitioner asserts that the trial judge who presided over his trial exhibited a bias against him through actions including limiting pre-trial discovery, making allegedly erroneous evidentiary rulings adverse to Petitioner, conducting questioning of witnesses that elicited testimony helpful to the prosecution, questioning Petitioner in a manner that signaled to the jury that his testimony was unconvincing, imposing the maximum possible sentence and submitting a bar

complaint against Petitioner's trial counsel for making comments to the media after trial about the bases for an appeal. (Docket Entry No. 51.) Petitioner claims that this demonstrated bias constitutes a structural defect in his trial that mandates relief in the form of vacating his conviction and sentence. (*Id.*)

In rejecting Petitioner's claim on direct appeal, the Tennessee Court of Criminal Appeals found that, with the exception of the sentence imposed, the aggrieving actions by the trial judge before and during trial were either not improper or were harmless and not prejudicial to Petitioner and, therefore, that they did not warrant reversal. *State v. Schiefelbein*, 230 S.W.3d 88, 112–13, 117–23 (Tenn. Ct. Crim. App. 2007). The court did, however, find that some of Petitioner's sentences should be concurrent rather than consecutive, and thereby reduced Petitioner's effective sentence from 96 to 36 years. *Id.* at 146–47. It also found that the judge abused his discretion by denying a motion to recuse Petitioner filed between the conclusion of trial and his motion for new trial, because some of the judge's actions combined to create a circumstance in which "the judge's partiality is reasonably in doubt." *Id.* at 136–37.

Petitioner now claims that the state court's disqualification of the trial judge from further proceedings entailed a finding of bias, and that the state court's refusal to reverse his conviction on that basis was contrary to and an unreasonable application of federal constitutional law. (Docket Entry No. 51.) Alternatively, Petitioner argues that if the state court did not find bias, that ruling constitutes an unreasonable determination of the facts in light of the evidence. (*Id.* at 30.)

## II. AEDPA STANDARD OF REVIEW

28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>     (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>     (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*,

--- U.S. ----, 131 S. Ct. 1388, 1398 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011) and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). The petitioner carries the burden of proof. *Pinholster*, 131 S. Ct. at 1398.

With respect to Section 2254(d)(1), "clearly established federal law" refers to "the holdings (as opposed to the dicta) of [the United States Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). *See Barnes v. Elo*, 231 F.3d 1025, 1028 (6th Cir. 2000) ("[W]e may only look to decisions of the Supreme Court of the United States when determining 'clearly established federal law.'"). The "contrary to" and "unreasonable application" clauses of Section 2254(d)(1) are independent tests and must be analyzed separately. *Hill v. Hofbauer*, 337 F.3d 706, 711 (6th Cir. 2003) (citing *Williams*, 529 U.S. at 412–13).

A state court decision is "contrary to" federal law only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13. This standard does not require the state court to cite applicable Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).

Even if the state court identifies the "correct governing legal principle," a federal habeas court may still grant the petition if the state court "unreasonably applies that principle to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 413. As the Supreme Court has advised, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). The reasonableness of the application of a particular legal principle depends in part on the specificity of the relevant rule. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). While the application of a specific rule may be plainly correct or incorrect, courts may have more leeway in applying more general rules in the context of a particular case. *Id.*

The Supreme Court has cautioned that AEDPA requires federal habeas courts to review state-

court decisions with "deference and latitude," *Harrington*, 131 S. Ct. at 785, and that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 786 (quoting *Yarborough*, 541 U.S. at 664).

### III. ANALYSIS

Petitioner has not cited any Supreme Court precedent with the same or materially indistinguishable facts as this case. The bedrock of his argument that his conviction must be vacated is *Tumey v. State of Ohio*, 273 U.S. 510 (1927), which concerned the validity of trials conducted by a village mayor who received a portion of every fine he imposed upon conviction, in an amount the Supreme Court found to constitute more than "a minute, remote, trifling, or insignificant interest," and was not otherwise compensated for his services as a judge. *Id.* at 531-32. The court stated that not all judicial disqualification issues "involve constitutional validity," and that some are "matters merely of legislative discretion." *Id.* at 523. Nevertheless, it had little difficulty concluding that it violates due process to subject a criminal defendant "to the judgment of a court, the judge of which has a direct, personal, substantial pecuniary interest in reaching a conclusion against him in his case." *Id.* In reaching its decision, the court did not find that the judge in the case before it had actually been influenced by his financial stake in the case, and acknowledged that there were "doubtless" judges who would be unaffected by such interest. *Id.* at 532. The court held that circumstances creating "a possible temptation" to partiality for an average judge would be sufficient to violate due process. *Id.* It went on to reject an argument to the effect that any error in the case was harmless because of the minimal fine imposed and the clear evidence of the defendant's guilt:

> No matter what the evidence was against him, he had the right to have an impartial judge. He seasonably raised the objection, and was entitled to halt the trial because of the disqualification of the judge, which existed both because of his direct pecuniary interest in the outcome, and because of his official motive to convict and to graduate the fine to help the financial needs of the village. There were thus presented at the outset both features of the disqualification.

*Id.* at 535.

Similarly, *In re Murchison*, 349 U.S. 133 (1955), involved a trial judge whose interest in the

4

outcome was personal, although not financial. In that case a judge, acting under Michigan law as a one-man judge-grand jury, called and interrogated two witnesses in the course of his investigation, and charged one witness with perjury and another with contempt based on how they had responded to his questioning. *Id.* at 134–35. Citing *Tumey*, the Supreme Court explained that "no man is permitted to try cases where he has an interest in the outcome," and that what constitutes a disqualifying interest is a fact-based determination that "cannot be defined with precision." *Id.* at 136. On the facts before it, and being careful to distinguish a court's to adjudicate contempt committed before it in open court, the court held that a judge who was "part of the accusatory process" could not thereafter be "wholly disinterested in the conviction or acquittal of those accused." *Id.* at 137. Accordingly, it found those circumstances to violate the petitioners' right to due process. *Id.* at 139.

There is no doubt that these cases stand for the proposition that where a judge's bias violates a criminal defendant's right to due process, relief is automatic without regard to any harmless error analysis. *See Neder v. United States*, 527 U.S. 1, 8 (1999). But neither case supports Petitioner's claim, which arises not from any personal or extrajudicial interest in his conviction by the trial judge, but from an alleged inference of bias based solely on the judge's rulings and conduct. Moreover, Supreme Court precedent clearly establishes that a judge might be disqualified for reasons not grounded in constitutional due process. *See Bracy v. Gramley*, 520 U.S. 899, 904 (1997) (stating that with respect to judicial disqualification, due process is "a constitutional floor, not a uniform standard," and that most disqualifications are covered by "common law, statute, or the professional standards of the bench and bar"); *Fed. Trade Comm'n v. Cement Inst.*, 333 U.S. 783, 702 (1948) (citing *Tumey*, 273 U.S. at 523, to state that most matters of disqualification do not "rise to a constitutional level"). The state court's implicit ruling in this case that due process did not automatically mandate a reversal of Petitioner's conviction due to the disqualification of the trial court judge was therefore not contrary to clearly established Supreme Court precedent.

Nor was the state court's determination an unreasonable application of Supreme Court precedent. The state court disqualified the trial judge on the basis that his "impartiality might reasonable questioned" pursuant to a Tennessee Supreme Court ethical cannon. *Schiefelbein*, 230 S.W.3d at 136–

5

37. Although it concerned disqualification under a federal recusal statute, 28 U.S.C. § 455, discussion by the Supreme Court in *Liteky v. United States*, 510 U.S. 540 (1994) is helpful to this analysis. In that case, the court distinguished between judicial dispositions about a case or party that are, for various reasons, inappropriate, and those that are acceptable:

> The judge who presides at trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings . . . .

*Id.* at 550–51. Accordingly, a judge's behavior during trial that is "critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do[es] not support a bias or partiality challenge." *Id.* at 555. The court explained that a judge's "favorable or unfavorable predisposition" that arises from the course of litigation can only be characterized as "bias" or "prejudice" where "it is so extreme as to display clear inability to render fair judgment," or where the judge's comments "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* at 551, 555. The court held that the alleged judicial impatience for and animosity toward the criminal defendant in that case, including the judge's evidentiary rulings, questioning of certain witnesses and "anti-defendant tone" during trial, failed to rise to that level. *Id.* at 556. This is particularly enlightening because constitutional due process sets an even higher standard for relief than § 455. *Railey v. Webb*, 540 F.3d 393, 415 (6th Cir. 2008) (holding that Supreme Court precedent did not clearly establish that criminal defendant's due process rights were violated where trial judge was the uncle of the prosecutor). Accordingly, it was not unreasonable for the state court to find that constitutional due process was not violated and did not require the relief sought by Petitioner, despite the finding that disqualification was appropriate under the more stringent ethical standards imposed by the court.

Finally, Petitioner's alternative argument that the state court made an unreasonable determination of the facts regarding judicial bias is without merit. Just like the fact of kinship in *Railey*, the relevant facts in this case – the rulings, comments and actions of the trial judge – are not in dispute, and the Court "can conclude without hesitation that the [state] court made no 'unreasonable determination' of these facts." *Railey*, 540 F.3d at 399. Petitioner's quarrel is with the application of the law to those facts, which the

Court has already resolved.

## IV. CONCLUSION

For the reasons explained above and in the R&R, the Magistrate Judge correctly concluded that Petitioner has not established that he is entitled to judgment in his favor on this claim.

It is so **ORDERED**.

_Kevin H. Sharp_
Kevin H. Sharp, Chief Judge
United States District Court